*349 Opinion op the Court,
by Judge Mills.
TO an action of assumpsit brought in the name of James Coleman, the surviving partner of Robert gowan & Co. the appellants pleaded non-assumpsit, ■with leave to give special matter in evidence. On the trial, the appellants gave in evidence, three records from the courts of the state of Pennsylvania, in which the demand due from them to Robert Megowan & Co. had been attached by foreign attachments in that state, The firm of the appellants had two houses, one in this state, where two of the partners resided, and one in the state of Pennsylvania, where the remaining partner resided, at which latter house, the demands set up by the appellee were contracted. On the failure of the house of Robert Megowan & Co. in this state, these attachments had issued against the house of the appellants there, two of them by creditors resident there, and one of them by George Trotter, one of the firm of appellants, against the house of himself and partners in Philadelphia. In one of these records, there is a final judgment, to wit, that in which Trotter himself is plaintiff; in another there isa judgment nisi; and in the third, there is no judgment. It was admitted on this trial, that the appellants, at their house in Philadelphia, had paid these judgments to the several plaintiffs therein, and the question arose, whether the appellants were entitled to a credit for the amount so paid in this action. The court below decided, that as there were no executions issued on said attachments, and the appellants had paid them without such executions, the payment could not avail them as a bar in this action; while the appellants insisted that the judgments alone were a sufficient authority for such payment, and that as the laws of the state of Pennsylvania were not produced, in their absence, the judgments must be taken as prima facie good authority, and as valid until impeached; and these are the questions presented for our consideration.
By the constitntion of iudJmentstlofst any of the states are in every state; but credft"eater more* conclusive effect when dence in ther state, than they are the* state** *** where they are rendered.
When ajudgment of a sister state i produced,Sit will be pretrib^-íí jurisdiction* of the and that the the parties1-63 if it is im- ’ peached, the ¿LHies^on him who resists it.
fews states°ar-e3 must be as other
*350 It must be granted to be a general principle of common law, that process must be executed or the judgment rendered must be invalid, and that naming a person and styling him a party in the writ or pleadings,, alone, without giving notice of the proceeding, cannot bind or affect his interest. This rule is, however, made subject to many exceptions by statutory or local reguin almost every country, and perhaps it is ne- * v * * 4 4 cessary for the ends of justice and the advancement of commerce, that such particular exceptions should exist, They generally7 authorise proceedings in rem, or by con-r ucti ve service of process. Such appears to he the foreign attachment in England by the custom of Lon-such the laws of several of the American States; suc^ *s our Proceet'ing by a domestic attachment in case of absconding debtors, and of our proceeding in chancery against absent defendants. As the different gov-ernments America may and do institute such proceedings, it is competent for them to make judgments rendered therein, conditionally binding only, or binding a certain state of the proceedings or at a certain conclusively finai, or incontestible.
The constitution of the United States, makes all judgments of any state, evidence, and entitled to full k^h and credit in every state; but it is settled by this court, in the case of Rogers vs. Coleman and ux, Hard, 413, that this clause does not require greater faith and credit, or a more conclusive effect to be given to judgmerits or decrees, when tendered as evidence in another state, than they “* “-—"j ..........are entitled to in the state where they are rendered. To what credit they are entitled at home, may, then, be often a subject of inquiry, when °ffered abroad; and, of course, the inquiry ar’ses3 must he who offers them, prove that they are where they are rendered,, or he who opposes' them, show that they have but a partial effect? If ifie former is adopted, it would render the constitutional rule of but little effect; for the judgment or decree produced, could prove nothing until its force at home, was Provec^ as a matter of fact and law. We, therefore, conceive the general rule to be,, that when the judgment or decree of a sister state is produced, render-one tribunals, we must presume that tribunal had jurisdiction, and authority, and that the act in pursuance of that authority, does conclude and *351 bind the parties named therein; and as to impeaching its full credit, the onus probandi lies on him who resists it. That it was competent for the appellee to show in this case, that these judgments were not conclusive, that they could not bind,, until execution was we have no doubt; but we are also satisfied, that it lay on him to do so, by producing or proving the law by which these proceedings were created.
The generai rule is, that a'l payments tfon^a judgmentare good without executl°n.
Attachments pending, furmsb S?oil p)ea jn abate.
tae'ive special matia evifleNe’can" as in-any more might have been special-Pleaded in
A general ^rsonal^and as at large & fully by rhere0f annexed, is re-an(i thin^except is contained in the
Acknowledgof an assisnt>r’in relation to a h^trinsfers^3 it, maybe8 given in controvert betweerTThe assignee and the party a theclaim i»ted.
*351 We admit the authorities cited at bar, and that they conclusively show that payment in obedience to a foreign attachment in England, could not be pleaded in bar to an action for the demand attached, unless such payment was made in obedience to execution also, and the reason seems to be, that after the emanation of ex-ecution, the plaintiff, before he completed it, was bound to give pledges to his original debtor to pay him\the money, if he should appear in a certain time, and prove the debt. As this engagement was for the benefit of the original debtor, it is but reasonable to pel his debtor to stand out until such security is given, or to deprive him of the bar. Such appears to been the decision of the supreme court of New York, with regard to an attachment in the state of 5 John. Rep. 101. Such, also is the doctrine of cellor Kent, 4 John. Chan. Rep. 460. The supreme court of Pennsylvania, in Myers vs. Urich, 1 Binney 25, has decided the same way with regard to one of her own attachments. But we cannot see that the decision plies to the law under which these proceedings were and from the reports and elementary writers of that state, it seems they have more laws than one on the ject of attachments. If the appellee shall produce a law which suits these proceedings, and which shows they are not conclusive without execution, we mayT then be able to fix a construction thereon, which shall these judgments no more weight than that for which he contends, or to adopt the decision of the courts of that state in his favor. This, however, was not done, all such laws are and must'be introduced into our courts of original jurisdiction, as facts. Until this is that court ought to have taken these judgments as binding, and to have followed the general rule, that a ment in satisfaction of such judgment, is good, without oxecution, and that it is never necessary for a person, against whom a judgment is rendered, to wait for an *352 execution; but that it is his duty to act to the contrary. We, therefore, conceive that the judgments produced were evidence of an authority to the courts of Pennsylvania to to proceed, and that in the absence of the laws Pennsylvania, or any evidence impeaching their validity, without execution, the court below erred in at-to these judgments no greater credence than What Ú clÍt1'
We would, however, not be understood as applying this to the exemplification of a record in which there is no judgment. There the court has yet done no act, or exerc*sec^ no authority, deciding upon or concluding the rights of the parties, or showing that the attaching creditors, acquired any lien upon the debt, on the service of the attachment; and, of course, this reasoning cannot apply. It is true, that attachments pending, have uniformly been held to furnish a good plea in abatement; but the appellants did not plead, until the hour of pleading in abatement was over, and then offered a plea to the merits; therefore, they cannot be permitted to abate the action pro tanto. It is true that a right is reserved to give special matter in evidence; but that cannot be construed as including any thing more than what might have been specially pleaded in bar.
There is another point of considerable importance made in the progress of the cause. Evidence was given conducing to show that the appellee, or his trustee, had notice of the pendency of the attachments, and attempted to employ counsel to defend them, and some time afterwards, acknowledged that this money, for which this suit was now brought, was paid in Philadelphia rightfully, or language to that effect, and reflected upon his trustee or assignees, hereinafter named, for proceeding to recover this demand. To ward off the effects of these acknowledgments, the appellee’s counsel showed a deed of trust, in which the appellant had conveyed his estate to William S. Dallam, and an assignment of this debt by Dallam, as trustee, to Thomas H. Pindell, who afterwards assigned it to Richard Pin-dell, for whose use this suit was prosecuted. After-wards, the appellee himself assigned the same debt to Pindell, and confirmed the assignment of Dallam, his trustee; but this was after his acknowledgements aforesaid.
*353 The counsel for the appellants moved the court to instruct the jury: First, that the deed of trust from Cole-' man and Megowan to Dallam, was fraudulent and void as relates to the creditors of the former; and secondly, that if the jury believed that the appellants paid the amount of the demand in suit, to the creditors of the appellee, and that he, as surviving partner, after the death of his partner, acknowledged and approved the payment and enjoyed the benefit thereof, the law was for the appellants.
As to the first of these instructions, the court decided that the appellants were not in a situation to ask it. The second the court seemed to admit to be correct, if the appellee had not transferred the demand, leaving the inference that the transfers aforesaid destroyed the effect of said acknowledgements.
We shall consider this last instruction first; for there is no evidence of a transfer of the debt, except those produced by the appellant, and that made by Coleman was after his acknowledgements. If, then, the deed of trust did not pass the debt in question to Dallam, it is clear, that Dallam could transfer no right to Pindell; and it is equally clear, that if the deed does not transfer the debt then the appellants had no concern with the deed, and could not ask an instruction about its fraudulent qualities, .and the court decided the first point right.
Whether the deed does or does not transfer this debt, depends upon its terms. They are very comprehensive, and purport to pass “all the estate, real, personal and mixed, to which they (the grantors) were entitled, either in law or equity, within this state, the state of Ohio, at New-Orleans or elsewhere, whether held jointly, severally or in common;” but these expressions immediately follow and limit its operation—“the situation, quantity, quality, amount and species of which said estate is more at large and fully explained, by a schedule thereof, annexed to this indenture, and intended to be recorded therewith.” To the schedule, then, we must look for what is, or is not embraced in the deed, and we do not conceive that any thing more is included than what the schedule contains. In the schedule, this debt is not embraced, and, of course, -it was not conveyed by the deed, and Dallam had no authority to transfer the demand; nor could he confer any title from the deed, and the first valid transfer is that by Coleman, *354 after the acknowledgments proved. It then folIows9 ■.that the court ought to have given the last instruction positively, and could not have erred in declining to give the first, although the deed may be in law fraudulent. It is true there is an authority in the deed to collect debts, and a power to act as attorney for the grantors; but these debts are the debts in the schedule, if any, and the power granted was over the estate enumerated in the same instrument and no other.
We will return and notice an exception to one of the attachment records, which appears to have been relied on. It was insisted that, Trotter could not be plaintiff in the attachment and also defendant. He was not so properly a defendant as garnishee. This may furnish grounds for an inference that the attachment was collusive; but we cannot say that the laws of Pennsylvania forbid it, or look into the regularity of the judgments ■of that state. Of course, it is not necessary to enquire whether such proceedings, by parties in such an attitude, can be tolerated here.
The judgment of the court below must, therefore, be reversed, and the verdict be set aside, and the cause be remanded for new proceedings not inconsistent with .this opinion.