# DAVID WALDO, JACOB HALL, AND WILLIAM McCOY v. HUGH M. BECKWITH.

AFFIDAVIT AND BOND FOR ATTACHMENT, FILING OF.—The affidavit for an attachment, together with the bond, with the clerk's approval indorsed thereon, must be filed before issuing an attachment, or the writ will be void.

NUNC PRO TUNC FILING OF PAPERS.—The *nunc pro tunc* filing of papers, and the *nunc pro tunc* performance of other acts provided for by statute, must be done by the order and direction of the court, and its record must contain the order.

BILL OF EXCEPTIONS MUST CONTAIN, WHAT.—A party bringing to this court a bill of exceptions, must so embody his facts and points that the court may clearly know what it is called upon to decide.

FACTS FOR BASIS OF NUNC PRO TUNC ORDER, HOW OBTAINED.—The facts upon which to base an order for an act to be done *nunc pro tunc* should be ascertained from the records of the court and from its immediate officers, and not from evidence *aliunde*, as by the testimony of a former clerk. *Contra*, Watts, J.

PLEA IN ABATEMENT OF ACTION PENDING IN ANOTHER COURT.—A plea in abatement, that a suit for the same cause is pending in the courts of another state, must show that the same party is plaintiff in both suits; and if it appear that the present defendant is plaintiff in the other suit, the plea will be disallowed. Great strictness as to such a plea is required.

DEGREE OF CARE REQUIRED OF ONE KEEPING CATTLE FOR HIRE.—Where a party sues for services and supplies furnished in herding and feeding a band of work oxen, and it appears that nearly all the cattle died while in his charge, he is not bound to show that he exercised extraordinary care, but only that he took such care as a prudent man mindful of his own interests would take of his own property.

Opinion of the Court—Benedict, J.

OLD SPANISH LAW OF PASTURES.—The old Spanish law of pastures does not apply to one who undertakes for pay to keep a band of working oxen during the winter.

VERDICT AGAINST EVIDENCE.—The court will not disturb a verdict merely because it is against the preponderance of evidence; but it is otherwise where there is no evidence on a point essential to the support of the verdict.

PROOF OF JOINT LIABILITY UNDER ALLEGATION OF PARTNERSHIP.—In an action against a number of persons, alleged to be partners under a particular firm name, to recover for the feeding of certain cattle alleged to belong to them, it is sufficient, it seems, to show a joint interest and joint liability without proving that the cattle belonged to them as a firm.

RUMOR AS EVIDENCE OF PARTNERSHIP.—A mere rumor of the existence of a partnership under a particular firm name, not showing who compose it, is not evidence of its existence in an action against it.

VOLUNTARY APPEARANCE OF A DEFENDANT.—The voluntary appearance of the defendant in a suit is a waiver of process or notice, and cures all irregularities therein; and the same rule obtains where an attempt is made to gain jurisdiction of a non-resident by attachment.

DEFECTS IN WRIT NOT NOTICED ON MOTION TO DISMISS.—A motion to dismiss a cause reaches only substantial defects in the petition, and defects in the writ can not be noticed thereon. *Per* Watts, J.

FILING, WHAT IS.—The filing of a paper is its actual delivery to the clerk, and the keeping of it by him among the papers in the case, and is not the indorsement of it by the clerk. *Per* Watts, J.

BILL OF EXCEPTIONS, EVIDENCE NOT CONTAINED IN.—Depositions not made a part of the bill of exceptions can not be considered on appeal. *Per* Watts, J.

APPEAL from the First Judicial District Court for Santa Fe county. The case is stated in the opinions of Benedict and Watts, JJ.

*Theodore D. Wheaton,* for the appellants.

*Ashurst and Smith,* for the appellee.

By Court, BENEDICT, J.:

This was a suit against the appellants as non-residents. On the thirtieth day of August, 1851, Beckwith filed his petition in the clerk's office of the district court, for the county of Santa Fe. On the same day an attachment was issued by the clerk, to John Jones, marshal, which was returned by him, "levied on eight mules, one wagon, three Colt's revolver pistols, one ditto rifle, one horse pistol,

four guns, two saddles and bridles, six sets of mule harness, and one Allen's revolver pistol."

The cause was continued from term to term until the June term of 1853. At this term it appears that publication to the defendants of notice that this action was pending against them had been duly made. The record shows that at this term the defendants moved the court to dismiss the case for the following reasons, viz:

1. There is no writ.

2. There is no sufficient writ.

3. There is no attachment bond filed or indorsed as required by law.

4. There is no sufficient bond.

5. There is no affidavit filed on which to base said suits, which motion was by the court overruled. Afterwards, on the same day, the plaintiff filed an affidavit and bond, each bearing date the twenty - ninth day of August, 1851. On the bond was the following indorsement: "The penalties and securities in the above bond are approved this twenty-second day of June, 1853, as of August twenty-ninth, A. D. 1851.                    R. H. TOMPKINS. Clerk."

The defendants filed a plea in abatement of the cause, averring that before the commencement of this suit, to wit, on the twentieth day of June, 1851, a suit was commenced and pending in the circuit court for the county of Jackson, in the sixth judicial circuit, in the state of Missouri (said circuit court having full power and jurisdiction to try and determine the same), in which the same identical cause of action in plaintiff's declaration mentioned is in dispute and pending between the same parties to this suit, as by the records and proceedings of said circuit court will fully appear.

To this plea the plaintiff demurred, and the court sustained the demurrer. The defendants then filed their answer to the plaintiff's petition in the form of general issue in assumpsit. . The issue being formed, a jury was called and the parties went to trial, and the jury found a verdict

for the plaintiff in the sum of three hundred and thirty dollars.

The defendants then moved the court to set aside the verdict and grant a new trial, also in arrest of judgment, both of which motions were overruled, and the court rendered judgment for the plaintiff for the amount of the verdict and his costs, and that the property levied on under the attachment be sold to satisfy the same. The defendants then filed their exceptions to the opinions of the court, and prayed and took their appeal to this court. The following are the errors assigned:

1. The court erred in overruling the motion to dismiss.

2. The court erred in admitting the testimony of Caleb Sherman, and the approval of the attachment bond and filing of the original papers in the suit.

3. The court erred in allowing the bond and affidavit of the plaintiff below, together with the writ, to be filed *nunc pro tunc.*

4. The court erred in sustaining the demurrer to the plea in abatement.

5. The court erred in overruling the motion for a new trial.

6. The court erred in overruling the motion in arrest of the judgment.

The three first errors assigned will be considered in the same connection. The law which authorizes and prescribes proceedings by attachment against the property of a debtor in the district courts of this territory is contained among the general provisions of Kearny's code, which have been re-enacted by the legislature held in pursuance of the organic act of September, 1850.

The second section of that portion of the code, under the head of attachments, provides that a creditor, wishing to sue his debtor by attachment, may place in the clerk's office of the circuit (district) court of any county of this territory a petition, or other lawful statement of his cause of action, and shall also file an affidavit and bond; and thereupon such creditor may sue out an original attachment against the

lands, tenements, goods, moneys, effects, and credits of the debtor in whosesoever hands they may be.

The fifth section is as follows: "The clerk shall judge of the sufficiency of the penalty and security in the bond. If they be approved, he shall indorse his approval thereon, and the same, together with the affidavit and petition and other lawful statement of the cause of action, shall be filed before an attachment shall be issued."

We need no precedents to enlighten the court as to the meaning of these sections. They are clear and positive that an affidavit and bond shall be made, that the clerk shall approve the bond, that he shall indorse his approval thereon, and that these and the petition, or other lawful statement of the cause of action, shall be filed before an attachment shall be issued. Were these requirements complied with? If so, the record must show the facts, for beyond this the court will not look for evidence in the proceedings of the cause below. It shows the petition to have been duly filed August 30, 1851, stating the cause of action to be that the defendants were indebted to the plaintiff in the sum of seven hundred dollars, on account of forage, hay, corn, and fodder, and provender furnished the cattle of the defendants, etc. Nearly two years after this, at the June term, 1853, as shown by the record, the bond and affidavit were filed, and the approval of the bond then made and indorsed. It is contended that the court caused the approval and filing to be done at the June term, *nunc pro tunc*, in pursuance of the provisions of section 34 of an "Act regulating practice in the district and supreme courts of the territory of New Mexico, approved July 2, 1851," and which reads as follows:

"It shall be the duty of the clerk, when any paper is filed in his office, to enter immediately on the back thereof his certificate of the day on which it was filed in the words: ' Filed in my office this —— day of ——, 18—,' and sign his name as clerk to the same. But in case he should at any time neglect so to do, it may, at the discretion of the court, guided by the justice of the case, be entered *nunc pro tunc.*

In like manner shall all other matters be performed *nunc pro tunc* when the ends of justice shall require it."

It will not, we think, be urged that the acts contemplated in this section are acts which may simply be "allowed" and "permitted" to be done by the clerk or other officers of the court, but acts to be done by the order and direction of the court itself, and when done, the record must show and contain such order. Does this record in this cause show any such order? · If so, it is found in one of the bills of exceptions signed by the judge, though not sealed. These are the words: "Plaintiff was permitted to introduce the testimony of Caleb Sherman, formerly clerk of this court, for the purpose of showing the time of the filing of the papers and approval of the bond in this cause, and also the fact of said filing and approval to be marked and indorsed upon said papers and bond *nunc pro tunc.*" The party who excepts to the acts, opinions, or ruling of the court below, and presents his exceptions to this court for review in a bill, must so embody his facts and points that this court can clearly know what it is called upon to adjudicate. The bill above referred to speaks of a time of filing of the papers and approval of the bond, and the filing and approval to be marked and indorsed upon said papers and bond *nunc pro tunc.* What these papers were is not specified, and the court will not attempt to specify by inference, against the plain and unqualified showing of the record, as neither the bill of exceptions nor the record fixes upon any other time at which the bond and affidavit were filed, other than the June term, 1853. If the bond and affidavit, before the attachment issued, were delivered to the clerk, and by him received, to be kept on file, such facts are not disclosed by the record. From this it follows that the issuing of the writ of attachment was without authority, and that all of the proceedings under it were null and void. It appears that the plaintiff was permitted to introduce Caleb Sherman, a former clerk, to prove by him the time of the actual filing of the papers and approval of the bond, to which the defendants excepted.

In the thirty-fourth section of the act herein cited, we do

not suppose that the legislature intended to confer upon the courts an unlimited power to exert their discretion *nunc pro tunc.* The rule is universal, that no act shall be done *nunc pro tunc*—as now for then—which shall work injustice to a party in court. If the practice is allowed of permitting a party to introduce witnesses to show that an act by the court should be done *nunc pro tunc,* it must also permit the adverse party to introduce counter-witnesses, and herein must result all the rules applicable to testing the credibility of oral testimony, such as impeachment, etc. In such a conflict we are of opinion there would be great danger of violating the rule above stated, and that the ends of justice, instead of being promoted, might be thwarted. In prescribing to the courts below a rule of practice by which to obtain the facts upon which to exercise their discretion in pursuance of section 34, we think they should be confined to their own records and to the officers in immediate connection with the courts. In the present case the plaintiff appeared from term to term in his case for nearly two years, and if the old clerk had neglected to perform the official acts absolutely required by statute, the plaintiff had abundant opportunities to have learned the facts and applied in time for the correction, and had the correction clearly made a part of the record in his case.

We come now to the fourth error assigned. We see no error in the court for having sustained the demurrer to the plea in abatement. Much strictness is demanded by courts in pleas of this sort. The plea in this case was loosely drawn, and failed to aver that the plaintiff in this cause was the plaintiff also in the suit pleaded. Besides this, by reference to the record to which the plea referred, we find that the suit in Missouri was by the defendants in this cause against Beckwith. We do not see that he should be denied his right to bring a cross action against Waldo, Hall, and McCoy if he should choose to do so.

In the exceptions to the opinion of the court overruling the motion for a new trial, it seems the defendants based their motion upon these grounds, to wit: 1. The jury found against the law and the evidence. 2. The court gave

wrong instructions to the jury. 3. The court refused instructions which should have been given.

Plaintiff introduced witnesses on the trial, who testified to his keeping, during the winter of 1850 and 1851, between forty and fifty head of oxen. The testimony disclosed no person except defendant Hall, as having exercised the control over the cattle, in hiring Beckwith to winter them. One witness, Cummings, stated that he was informed by Hall, one of the defendants, that he hired Beckwith to winter his cattle; that a few days afterwards he called at plaintiff's ranch, as he had cattle of his own feeding there; that he saw the cattle coming from water, and that Beckwith remained in the house while he went out and saw said cattle fed, by the servants of Mr. Beckwith, with corn and fodder; that the winter was very hard and cold, and many of the cattle died; that some came to his house, about twelve miles from Beckwith's; he fed them with meal but they died; that he lost one or two of his cattle that year; that the cattle were in a very poor condition; that fodder and corn were very high that year; that he believed it was worth some ten or fifteen dollars a month to feed those cattle that year; that the government was wintering cattle near plaintiff's, and offering very high prices for corn and fodder; and at the time he saw said cattle fed, they were fed with the best sort of corn and fodder, cut up together and excellently cured; that of the two cattle kept for him (the witness) in the spring of the year, one was fat enough for beef, and the other in good order.

Charles Hughes, another witness, among other things, testified that in the winter of 1850 and 1851, he was living on Beckwith's ranch as a hand; that forty-four oxen were delivered to Beckwith by a person who then stated that they were sent there by defendant Hall; that they were delivered in December of that year; that he fed them well with corn and fodder during the winter, at morning and night; that they they were in very bad condition when they arrived there, and that they all died by the month of May except three; that they died on an average of about three a week; that it was worth about ten or eleven dollars a head to take

care of them during the whole time they were there; that
the winter was very hard, and there was much snow on the
ground.   In cross-examination he stated that in the month
of February there were but twenty-five of said cattle, the
rest having died; in the month of March there were only
ten, and in the month of April but three; that Beckwith
himself had fourteen cattle wintered that year on his ranch,
and some one or two of them died.

Preston Beck testified that he knew by rumor of the firm
of Waldo, Hall & Co., but no further.   This testimony of
Beck's was all that was given to the jury to prove the part-
nership of the defendants, the joint ownership or possession
of the cattle, or any joint liability, for the keeping of the
same, or of whom the firm of Waldo, Hall & Co. was con-
stituted.   There was some other testimony, but enough is
here copied to enable us to see the bearing and correctness
or erroneousness of the instructions of the court to the
jury, and of the overruling of the motion for a new trial.
The petition avers the joint indebtedness of the defendants,
and describes them as trading under the name and style of
Waldo, Hall & Co.

The court instructed the jury:

1. That unless the plaintiff proved the cattle in question
were the cattle of David Waldo, Jacob Hall, and William
McCoy, trading under the name, firm, and style of Waldo,
Hall & Co., they must find for the defendants.

2. The plaintiff in this suit was bound to take as much
care of the cattle as a prudent man, mindful of his own
interests, would take of his own.   If such care was not
taken, and they died through his neglect, he would not be
entitled to pay.

The court refused to give the following instructions, to
wit: That in order to recover in this action, the plaintiff
must show extraordinary care and diligence in feeding and
herding of said cattle, and if this proof has not been made,
they must find for the defendants.   We think the court very
properly refused this instruction, and that the old Spanish
law concerning pastures, as contended by counsel, does not

apply to him who during the winter undertakes to keep for pay a body of working oxen.

All are of opinion that the second instruction given was substantially correct. The evidence disclosed touching the principle embraced in this instruction is by no means of a very satisfactory character. Of not less than forty-four head of oxen which went into the care and keeping of the plaintiff in December, 1850, only three were living by the following May. Some of these cattle strayed away the distance of twelve miles to Mr. Cummings'; he fed them with meal, and they died. No witness shows that Beckwith manifested any concern at the absence of the cattle, or made any efforts to restore them back to his ranch. Of the fourteen head of cattle belonging to himself, one or two died during the winter. The government at that time was herding cattle near plaintiff's ranch, and offering very high prices for corn and fodder. The cause of the loss of so many of Hall's or defendants' cattle is not sufficiently accounted for to relieve the plaintiff from the strong probabilities that he was guilty of gross neglect in the keeping, feeding, and securing of those cattle. But this is a matter upon which a jury has passed and rendered their verdict, and this court will not disturb the verdict of the jury upon the ground of a preponderance of the evidence being against their finding.

We do not think that the first instruction was wholly correct. The jury was told that unless the plaintiff proved that the cattle in question were the cattle of the three defendants, trading under a certain name, firm, and style, they must find for the defendants. The first part of this instruction was equivalent to telling the jury that they must find the actual property and ownership of the cattle in the defendants. Any degree of interest by which they could have been found by the evidence jointly liable for the keeping of the cattle, if kept properly, would have been sufficient upon which to have based a verdict against the defendants. So a joint liability had been proven against them all. We think it was of no moment to find that the cattle were connected with and a part of the trade under the particular and arbitrary style or description of Waldo, Hall & Co. The

cattle might have been wholly without the company trade, and still the defendants be liable. The plaintiff, in his petition, adds the fanciful company description, it is true; yet if a joint interest, the keeping of the cattle, and a joint liability had been shown, that would have been sufficient upon that point. So far from showing these facts, as appears from the bill of exceptions, no proof was presented to the jury establishing any sort of a partnership, joint interest, or liability of the defendants in the cattle or their keeping. In this particular, then, the verdict of the jury was found, not contrary to evidence or to the preponderance of evidence, but absolutely without any evidence at all. Mr. Beck testified that he knew by rumor of the firm of Waldo, Hall & Co., but no further. He does not even state of what persons rumor said the firm was composed of. The judgment of the court below must therefore be reversed, the verdict of the jury set aside, and a new trial granted. From the view the court takes of the attachment proceedings in this case, as shown by the record, they must be quashed. The question arises, then, how stands this cause in court? It stands as if the plaintiff had filed his petition in an ordinary mode against the defendants; and they, by their voluntary appearance, had waived all process, and service of process, and all irregularities, and answered to the merits of the case. The books are full of adjudged causes, in which the voluntary appearance of the defendants is held a waiver of all processes of notice, and cures all irregularities. The same rule prevails in attachments as in other cases. In *Lincoln* v. *Tower,* 2 McLean, 473, the court said: "The attachment is a mode by which to compel the appearance of the defendants; and if he do not appear, and contest the validity of the claim, there seems to be no reason why he should not be bound in person by the judgment." So in 3 Scammon, 60, the court says, in a suit by attachment, "that appearance is as good as personal service." In this case, defendants selected to make a full appearance, and after having pleaded to the merits, and contested the validity to the plaintiff's claim, they must abide the consequences of their choice

and acts. We deem it unnecessary to say anything rela-
tive to the motion in arrest of judgment, and the overrul-
ing of the same by the court, as they must be fully disposed
of on the other points presented.

Judgment reversed, and cause remanded to the Santa Fe
district court for new trial.

Separate opinion by WATTS, J.:

Hugh M. Beckwith, on the thirtieth day of August, 1851,
filed his petition in the United States district court for the
first judicial district, against Waldo, Hall & Co., and caused
a writ of attachment to be issued and be levied on the
property of the defendants. At the March term, 1852, of
said court a notice of the pendency of the suit was ordered
to be published, the defendants being non-residents of the
territory. At the June term, 1852, of said court, there was
a motion made to set aside the publication of notice and
dismiss the case, and the motion was overruled. At the
September term, 1852, it appearing that publication had
not been duly made, the cause was continued for publica-
tion. The cause was continued at the March term, 1853.
On the application of Beckwith, the plaintiff in the court
below, proof of publication as to pendency of said suit was
duly made. At the June term of court, 1853, the defend-
ants appeared and moved to dismiss the cause. The motion
was overruled. The defendants then demurred to the peti-
tion. The demurrer was sustained and the plaintiff was
permitted to amend his petition. The defendants then filed
the following plea in abatement:

"*Hugh N. Beckwith* v. *Waldo, Hall & Co.*, attachment, and
the said defendants come and defend the wrong and injury
when, etc., and pray judgment of the said writ and declara-
tion of the said plaintiff, because they say, that before the
commencement of this suit, to wit, on the thirteenth day of
June, A. D. 1851, a suit was commenced and pending in the
circuit court for the county of Jackson, in the sixth judicial
circuit, in the state of Missouri (said circuit court having
full power and jurisdiction to try and determine the same),
in which the same identical cause of action in plaintiff's

declaration mentioned is in dispute and pending between the same parties to this suit, as by the records and proceedings of said circuit court will fully appear. Wherefore, by the reason of the pendency of said suit as aforesaid, the said defendants pray judgment of the writ and declaration, and that the same may be quashed."

From the record of the Jackson circuit court accompanying the plea in abatement, it appears that Waldo, Hall & Co. had instituted a suit for damages against Beckwith upon his non-compliance with a special contract for the wintering and taking care of cattle, and Beckwith was defending said action by setting up the indebtedness of Waldo, Hall & Co. to him for the keeping of said cattle. To this plea in abatement the plaintiff demurred, and the court sustained the demurrer. The defendants then pleaded *non assumpsit*. The case was tried by a jury at the June term, 1853, and a verdict rendered for the plaintiff for three hundred and thirty dollars. The defendants moved for a new trial and in arrest of judgment, both of which motions were overruled by the court, and judgment was rendered on the verdict. The defendants then appealed the case to this court.

There is a bill of exceptions on record showing the evidence given on the trial and the instructions of the court to the jury. The court below permitted Caleb Sherman, former clerk of the court, to be sworn as to whether the papers were filed by him and the attachment bond approved or not, and on his statement of the filing of the papers and the approval of the bond by him and the time when it was done, and his omission to note these facts on the papers at the time. The filing of the papers and the approval of the bond was permitted to be entered *nunc pro tunc*, to which the defendants excepted. The record in this case also shows that at the June term of court, at which the trial took place, there was also opened in court a sealed package of depositions containing the evidence of Young, Van Epps, and Martin. The record shows no motion to suppress these depositions, nor does it state whether they were read in evidence to the jury or not. In like manner the bill of exceptions does not show whether said deposi-

tions were read or not, but states at its conclusion "that this was all the evidence introduced in said cause by the plaintiff or defendants." The court gave the jury the following instructions:

1. That unless the plaintiff proved that the cattle in question were the cattle of David Waldo, Jacob Hall, and William McCoy, trading under the name, firm, and style of Waldo, Hall & Co., they must find for the defendants.

2. That the plaintiff in this suit was bound to take as much care of the cattle as a prudent man, mindful of his interest, would take of his own, and if such care was not taken, and they died through his neglect, he would not be entitled to pay.

The following instruction was asked for by the defendants and refused: "That in order to recover in this action the plaintiff must show extraordinary care and diligence in feeding and herding said cattle, and if this proof has not been made, they must find for the defendants."

The appellants contend that this case must be reversed, and for the reversal assign the following reasons:

1. The court erred in overruling the motion to dismiss.

2. In admitting the evidence of Caleb Sherman to the approval of the attachment bond, and filing of the original papers in this suit.

3. In allowing the bond and affidavit of the plaintiff below, together with the writ, to be filed *nunc pro tunc*.

4. In sustaining the demurrer to the plea in abatement.

5. In overruling the motion for a new trial.

6. In overruling the motion in arrest of judgment.

If any of these errors are existing in this record, the case must be reversed. We will first consider the refusal of the court to dismiss the case. On the motion of the defendants it is contended, that the writ in this case is defective and void; and for this reason the motion to dismiss the case ought to have been sustained. A motion to dismiss the cause could only reach substantial defects in the petition, for upon such a motion the writ would not come before the court, and none of its defects could be noticed. If a writ is bad, the court, on a suggestion of the defects, *amicus*

*curiæ,* will quash the writ, or permit the defect to be amended, if the error is of such a nature as can be amended. If there is a variance between the writ and petition, that variance can only be taken advantage of by plea in abatement. In the case of *McKenna* v. *Fisk,* 1 How. (U. S.) 241, also in the case of *Chirac* v. *Reinicker,* 11 Wheat. 280, it was decided that any mistake in the writ, or variance between the writ and the court, must be taken advantage of by a plea in abatement. The defendant can not avail himself of this objection after pleading the general issue. In the case of *Duvall* v. *Craig et al.,* 2 Id. 45, it was decided, that "such an exception can not even be taken advantage of upon a general demurrer to the declaration." The English courts long since adopted a rule refusing to allow oyer of the writ, and have thus wisely prevented many frivolous objections from being made, to the hindrance of and delay of justice: See 1 Tidd Pr. 502. Perhaps a party in this territory, in the sense of any rule of court, might be entitled to demand oyer of the writ in order to plead in abatement, but unless the record shows that oyer of the writ was asked and granted, the defendants would have no right to take advantage of any defects which might exist in the writ: See the case of *How* v. *McKinney,* 1 McLean, 319, where the law on this subject is fully stated, and the authorities cited.

In the second place it is contended, that the court below erred in permitting Caleb Sherman to testify when the original papers were filed and the attachment bond approved by him as clerk, and authorizing said filing and approval to be made now for then. The thirty-fourth section of the practice act, Laws of the Territory, page 145, reads as follows: "It shall be the duty of the clerk, whenever any paper is filed in his office, immediately to enter on the back thereof his certificate of the day on which it was filed, in the words: 'Filed in my office, this —— day of ——, 18—,' and sign his name as clerk to the same. But in case he should at any time neglect so to do it may, at the discretion of the court, guided by the justice of the case, be entered *nunc pro tunc.*" In like manner shall all

other matters be performed *nunc pro tunc,* when the ends of justice may require it.    There is a material distinction between the actual fact of filing a paper and the written evidence of its having been filed.    A paper is, in fact, filed when it is delivered to the clerk, and received by him to be kept with the papers in the cause: See Bouv. Dict., tit. File; 2 Cart. (Ind.) 91.    In the case now before us it is clear that the papers were in fact filed, and the bond approved, but the clerk had omitted to notice and evidence such facts as the law directed him to do.    It was no fault of the plaintiff in the court below; he had complied with the law fully, as to the affidavit and bond; and the clerical error in the case, it was fully competent for the court to correct, and the purposes of justice required such correction to be made by a *nunc pro tunc* entry on the record, showing the date at which the papers were filed and the bond approved.    The court below committed no error in this particular, but it is not shown in the record that this *nunc pro tunc* entry was ever made.    It was permitted to have been made.    It ought to have been made, and the record ought to show the fact of its having been made, but it does not show it; it is a clerical omission, as must be clear by the reading of the bill of exceptions.    But this court can not supply that omission, however ample the authority of the district court may be in the premises.    If this is not the proper construction to put upon the thirty-fourth section of the practice act, then that section is in effect a nullity.

No person, except the clerk, can be expected to know whether a paper was filed with him, or a bond approved by him or not, except himself, and if it is illegal to hear his evidence and take his statements, it would be equally so to hear the evidence and take the statements of any other person.    If such were the proper construction of that section, then the omission or neglect of the clerk could never be rectified by the court, and the object of the law would be wholly defeated.    It was intended that the accidental omission or neglect of the clerk should not prejudice the

rights of litigants, and the construction we have given it is the only one calculated to promote that object.

In the fourth place it is contended, that the court erred in sustaining the demurrer to the plea in abatement. That the pendency of a former suit between the same parties for the same cause of action, will abate a subsequent suit, has been so repeatedly decided, that no authorities need be cited to support the position as a general rule of law. But that is not the question now before the court in the present case. Will the pendency of a suit of attachment in the Jackson circuit court for the state of Missouri, instituted by the present defendants against the present plaintiffs, defeat a suit in the United States district court for the territory of New Mexico, instituted by the plaintiff in this suit against the defendants? Whether the pendency of an attachment can in any case be pleaded in abatement, is a question about which the decisions of courts are far from being uniform. That foreign attachment or trustee process pending (though in another state) may be pleaded in abatement, was decided in the following cases: *Embree* v. *Hanna,* 5 Johns. 101; *Engle* v. *Nelson,* 1 Penn. 442; *Scott* v. *Coleman,* 5 Litt. 349 [S. C., 15 Am. Dec. 71]. In the case of *Winthrop* v. *Carlton,* 8 Mass. 456; *Morton* v. *Webb,* 7 Verm. 124; *Bowne* v. *Joy,* 9 Johns. 221; *Crawford* v. *Slade,* 9 Ala. 887, the contrary doctrine was decided and such pleas in abatement held bad. In the case of *Walsh* v. *Durkin,* 12 Johns. 99, it was decided that the "pendency of a suit in the circuit court of the United States in another state is not pleadable in abatement."

The converse of this proposition ought to be equally true—that the pendency of a suit in the circuit court of another state could not be pleaded in abatement of a suit in the United States district court of this territory, but the case of *Wadleigh* v. *Veazie,* 3 Sumn. 165, is more in point and decisive of the question presented in this case than any other authority we have been able to find. In that case the court says: "It is not a good plea in abatement to a suit in the circuit court of the United States for the recovery of land, that another action, in which the pres-

ent defendant is plaintiff, the present plaintiff is defendant, is pending in the state court for the recovery of the same land." If Waldo, Hall & Co. could sue Beckwith in the Jackson circuit court of the state of Missouri, and then with their suit thus pending, abate any suit which Beckwith might institute against them here, after such abatement of the suit here they might dismiss their action in the Jackson circuit court, and thus exclude Beckwith from having his claim adjudicated upon in either court. Whether a foreign attachment pending in another state can or can not be pleaded in abatement of a suit in the courts of this territory, under certain circumstances, is a question upon which we do not wish to be considered as having intimated any opinion. But we do decide that in this particular case, the plea in abatement now pleaded is bad, and the court below committed no error in sustaining the demurrer to said plea.

It is insisted by the appellants that the court below erred in refusing to give the jury this instruction: "That in order to recover in this action, the plaintiff must show extraordinary care and diligence in feeding and herding said cattle, and if this proof has not been made, they must find for the defendants." In support of this instruction, the appellants cite Escriche, 506. Even if the paragraph there cited is to be considered applicable to the present case, we think the instructions given by the court substantially cover all the duties enjoined by the civil law upon bailees for hire. A prudent man, mindful of his own interests in the management of his own stock, would be apt to comply with all the duties required of pasturers in the paragraph cited from Escriche.

It is also contended in this case, that the court below should have granted a new trial, because there was no evidence of the partnership of the defendants or a joint interest in the cattle wintered and taken care of by the plaintiff. The partnership is fully proved by some of the depositions on the record in this case, but it does not appear by the bill of exceptions that said depositions were introduced in evidence on the trial, and inasmuch as the bill of excep-

tions is explicit in declaring that the evidence in said bill of exceptions contained was all the evidence in the case upon the part of the plaintiff and defendant, we are bound to consider this case without regard to the facts contained in said depositions. Matters of evidence are not necessarily a part of the record, and can only be made so by a bill of exceptions setting forth the evidence. In the case of *Berry* v. *Hale,* 1 How. (Miss.) 315, the court explained the office of a bill of exceptions as follows: "A bill of exceptions is a method of placing upon the record, matters which do not properly belong to it, and should contain the matters so intended to be placed upon the record." The only evidence given in this case upon the subject of the partnership of the defendants is contained in a statement of Mr. Beck, "that from rumor he knew of the firm of Waldo, Hall & Co." In the case of *Earl* v. *Hurd,* 5 Blackf. 248, it was decided that "the existence of a partnership could not be proved by reputation." We think that the mere statement of a witness that he knew from rumor of the existence of the firm of Waldo, Hall & Co. is not sufficient evidence for the jury to infer that the defendants in the court below were liable as partners, and that the cattle kept by the plaintiff for them were partnership cattle.

The finding of the jury was not sustained by the evidence and was contrary to the instructions of the court.

The court below erred in not sustaining the motion for a new trial, and this cause must be reversed.