JUDGE LINDSAY
delivered the opinion oe the court.
This is an action founded on a judgment rendered by the Court of Queen’s Bench, in the province of Upper Canada, in the year 1861. The controlling question involved is whether that court had jurisdiction to render a judgment in personam against the appellee.
The demurrer to the petition as amended admits that he was a resident of that country and a subject of the British crown when the proceeding was commenced, and also when the judgment was rendered. The record of the Canadian court is made an exhibit, and from it we find that there was no personal service of process, and that appellee did not appear to make defense, nor for any purpose.
He was before the court, if at all, upon what is there termed “ substitutional service,” which, it is claimed, was sufficient to authorize the judgment, in view of the sworn return of the sheriff and other evidence.
Appellants do not question the propriety of the rule that generally the judgments of courts of foreign countries will be treated as void if the defendant has neither defended nor been afforded an opportunity to make defense, but insist that the judgment set up in this case does not come within the reason of this rule. As appellee was a resident of Upper Canada and a'British subject, his allegiance bound him to obedience to the laws of that power and to the results flowing from their administration, and it is claimed that he can in no form dispute the *375 validity of a judgment rendered against him in that country by a court of competent jurisdiction while that duty of obedience continued.to exist.
It is not denied that he had the right at any time he chose to throw off his allegiance to the British crown and become a citizen of the United States, but it is insisted that, this change of nationality in no sense absolved him from the payment of a debt, or the performance of any legal obligation existing by virtue of the laws of the country from whence he emigrated, more especially such debts and obligations as had been adjudged to exist by the courts of that country.
This position seems to be consistent with justice and reason, and is supported by very high authority. But, as stated at the outset, the existence of the legal duty or the moral obligation arising from the judgment of a court depends upon its jurisdiction as well of the persons whose rights are to be affected thereby as of the subject-matter of the litigation. Hence we have the right and it is our duty to determine whether in the case under consideration the Canadian court had this jurisdiction before we will act upon the legal presumption that its judgment is prima faeie evidence of the indebtedness of appellee to the appellants. If the former had been served with notice of the complaint and had failed to defend, or, making defense, had been unsuccessful, it might well be presumed that he actually owes the judgment debt, and he could not rightfully complain at being required to show that this presumption ought not to be allowed to prevail.
Here appellants show not only that appellee did not appear to their action, but that he had no actual notice that it was pending. It was an ex parte proceeding, and before the judgment should be allowed to shift the burden of proof upon the defendant to this action appellants ought to show a state of facts bringing the proceeding clearly within the provisions of the Canadian laws.
*376 The exhibit on file shows the law authorizing “ substitutional service” to be as follows: “The writ of summons, whether issued by one of the superior courts or by the county court, may be served in any county in Upper Canada, and the service thereof, whenever practicable, shall be personal; but the plaintiff may, on affidavit, from time to time apply to the court out of which the writ issued, or to a judge having jurisdiction over the case, and if it appears to such court or judge that reasonable efforts have been made to effect personal service, and either that the writ has come to the knowledge of the defendant or that he willfully evades service of the same, and has not appeared thereto, such court or judge may by order grant leave to the plaintiff to proceed as if personal service had been effected, subject to such conditions as to the court or judge seem fit.”
The record shows that the affidavits upon which the leave to proceed without personal service on appellee was given was the sworn retui’n of the sheriff to the effect that after reasonable effort he was not able to find the defendant, or to ascertain that he had any fixed place of abode, and that he had therefore left with his (defendant’s) father “a true copy of the writ of summons in this cause, together with the special indorsement thereon,” and “that the defendant was in the habit of visiting his said father’s house, and his father was instructed by me (the sheriff) to forward said copy to him,” and the affidavit of the plaintiff’s attorney, which is not in the record.
There is nothing before us from which it can be rationally deduced that the writ had ever come to the knowledge of appellee, or that he had willfully evaded its service. According therefore to appellants’ own showing they had no right to ask and the Canadian court no right to proceed to judgment.
We appreciate the fact that the courts of this state have no revisory power over the judgments of foreign courts; but *377 ■when a complainant seeks relief upon a foreign judgment, and shows himself that the court had usurped jurisdiction, they have the right to refuse to enforce its judgment, or even to regard it as prima facie evidence of the existence of a legal obligation on the part of the person sued.
The Supreme Court of Indiana exercised this right in the case of Cone v. Cotton (2 Blackford, 82), where the judgment had been rendered in the sister state of Ohio. In that case an Ohio justice had rendered a personal judgment upon one return of nihil. This judgment was declared void, the court saying, “If we take it for granted that constructive notice by two returns of nihil, as authorized by the common law, would be sufficient, yet less than this can by no means suffice. If there is a statute of Ohio authorizing a justice of the peace to give judgment on scire facias on one return of ‘ Not found/ we know nothing of it, and can presume nothing about it. If the existence of such a statute had been averred in the declaration, we might have adjudicated upon its effect; as it is, we have nothing to do with it.” The right to adjudicate upon the laws of Ohio to the extent that they fixed the jurisdiction of its courts was here distinctly claimed and exercised. Substantially the same doctrine was announced by the same court in the case of Snyder v. Snyder (25 Indiana, 397), and also by the Supreme Court of Wisconsin in the case of Rope v. Heaton (9 Wis. Rep. 332).
In the case of Phelps v. Holker et al. (1 Dallas, 261) the Supreme Court of Pennsylvania did not hesitate to examine 'the laws of Massachusetts with a view to ascertain the jurisdiction of the courts of that state in attachments against the property of persons “absconding or absent” therefrom. So in the case of Douglas, &c. v. Forest, ex’r of Hunter (4 Bingham, 686), Best, C. J., reviewed the laws of Scotland, and upheld the Scottish judgment because it was fully authorized by the laws of that country, and because it also appeared that *378 the decedent when he left Scotland was under a moral obligation to pay the debts.
This court, in the opinion delivered by Chief Justice Robertson in the case of Harris v. John (6 J. J. Marshall, 257), left it an open question whether a declaration founded upon an Illinois judgment against a non-resident citizen of that state who had not been served with process should or not contain an averment of some fact outside of the record tending to show the jurisdiction of the court; not even alluding to the earlier case of Scott and others v. Coleman (5 Littell, 351), in which it was held that, because.of the provision in the Federal Constitution declaring that “ full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state,” the general rule should be that whenever a judgment of a sister state was produced it should be presumed that the tribunal rendering it had the necessary jurisdiction and authority.
In the still later case of Biesenthall v. Williams (1 Duvall, 329), after referring to this doctrine, the court entered into an inquiry as to the jurisdiction of the Ohio court, and sustained its judgment because its jurisdiction was shown by the laws of that state. Except for the constitutional provision referred to in the case in 5 Littell, the defendant would not have been required to impeach the Pennsylvania judgment by showing want of jurisdiction in the court by which it was rendered.
We are inclined to establish in this state no such rule with regard to judgments rendered by courts of foreign nations; While we recognize the right of every government to determine for itself the manner in which its judicial proceedings shall be conducted, we are not bound by international comity to presume the existence of a debt or legal obligation by reason of a foreign judgment, where the person sought to be charged has not been offered an opportunity to make defense, *379 unless every fact necessary to authorize the foreign court under the laws of the place to render such judgment is made to appear affirmatively.
Considering the pleadings and exhibits in this case, we can not determine from the affidavit of the sheriff that Adam Condy had notice of the action, nor that he had willfully avoided the service of the writ; nor will we assume that the affidavit of the plaintiff’s attorney, which does not appear in the record, authorized the conclusion that either of these essential facts existed.
Failing to aver facts establishing the jurisdiction of the Court of Queen’s Bench to render the judgment declared on, the petition of appellants was in our judgment fatally defective.
The demurrers were properly sustained by the judge of the court of common pleas, and his judgment dismissing the petition as amended is affirmed.